# EXHIBIT "A"

DocuSign Envelope ID: DD1468AC-83EC-4896-A173-B7FFE5F23A7B    22STCV06557
Case 2:22-cv-02391-GW-AFM    Document 1-2    Filed 04/08/22    Page 2 of 37    Page ID #:12
Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: S█████ Kleifield

1  Hovanes Margarian SBN 246359
   hovanes@margarianlaw.com
2  Armen Margarian, SBN 313775
   armen@margarianlaw.com
3  Shushanik Margarian, SBN 318617
   shushanik@margarianlaw.com
4  THE MARGARIAN LAW FIRM
   801 North Brand Boulevard, Suite 210
5  Glendale, California 91203
   Telephone Number: (818) 553-1000
6  Facsimile Number: (818) 553-1005

7  Attorneys for Plaintiffs
   ROBERT GOUKASIAN
8  SOFIA GOUKASIAN

9

10                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

11               **THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

12  ROBERT GOUKASIAN, an individual; and    Case No.:  22STCV06557
    SOFIA GOUKASIAN, an individual,
13
                                            **PLAINTIFFS' COMPLAINT FOR DAMAGES**
14          Plaintiffs,

15  vs.

16  BMW OF NORTH AMERICA, LLC, a
    Delaware Limited Liability Company; and
17  DOES 1 through 30, inclusive,

18          Defendants.

19

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

## COMPLAINT

NOW COMES the Plaintiffs ROBERT GOUKASIAN, an individual; and SOFIA GOUKASIAN, an individual, by and through Plaintiffs' attorneys of record The Margarian Law Firm, with Plaintiffs' Complaint for Damages against Defendants BMW OF NORTH AMERICA, LLC, a Delaware Limited Liability Company; and DOES 1 through 30, inclusive, alleges and affirmatively states as follows:

### PARTIES

1.  Plaintiffs ROBERT GOUKASIAN and SOFIA GOUKASIAN ("Plaintiffs") are and were at all times relevant herein individuals residing in Los Angeles County, State of California and leased a new 2020 BMW 740I ("Subject Vehicle") in the State of California.

2.  Defendant BMW OF NORTH AMERICA, LLC ("Manufacturer") is and was, at all times relevant herein, a Delaware Limited Liability Company authorized to do business in the State of California and is engaged in the manufacture, sale, and distribution of motor vehicles and related equipment and services. Manufacturer is also in the business of marketing, supplying, and selling written warranties to the public at large through a system of authorized dealerships including SAI MONROVIA B INC., a California Corporation, doing business as BMW OF MONROVIA/MINI OF MONROVIA ("Seller"). Manufacturer does business in all counties of the State of California.

### BACKGROUND

3.  On or about May 20, 2020, Plaintiffs leased for valuable consideration a new 2020 BMW 740I, manufactured by Manufacturer, and bearing the Vehicle Identification Number WBA7T2C02LGL17154 ("Subject Vehicle"). (A true and correct copy of the lease agreement is attached hereto and marked Exhibit "A").

4.  The agreed upon value of the Subject Vehicle was $70,507.03. The total of payments under the lease totals $32,781.32.

5.  In consideration for the Motor Vehicle Lease Agreement ("MVLA"), Manufacturer issued and supplied to Plaintiffs several written warranties, including a four (4) year or fifty thousand (50,000) mile factory warranty, as well as other stated warranties fully outlined in the Manufacturer's Warranty Booklet.

6.  On or about May 20, 2020, Plaintiffs took possession of the Subject Vehicle and shortly

EXHIBIT A - 3

1    thereafter experienced the various defects listed below that substantially impair the use, value, and safety

2    of the Subject Vehicle.

3         7.    The defects listed below violate the express written warranties issued to Plaintiffs by

4    Manufacturer, as well as the implied warranty of merchantability.

5         8.    Plaintiffs brought the Subject Vehicle to Manufacturer's authorized dealerships for various

6    defects, including, but not limited to, the following:

7    • Defective battery – over five (5) failed repair attempts;

8    • Defective comfort access system – over two (2) failed repair attempts;

9    • Defective air conditioning system – over one (1) failed repair attempt;

10   • Defective cylinder head cover assembly – over one (1) failed repair attempt;

11   • Defective crankcase ventilation valve – over one (1) failed repair attempt;

12   • Defective right brake/taillight – over one (1) failed repair attempt;

13   • Defective front left parking sensors – over one (1) failed repair attempt;

14   • Defective cigarette lighter fuse – over one (1) failed repair attempt;

15   • Defective lower radiator flap – over one (1) failed repair attempt;

16   • Any additional complaints made by Plaintiffs, whether or not they are contained in

17        Manufacturer's records or on any repair orders.

18        9.    Plaintiffs provided Manufacturer through Manufacturer's authorized dealers sufficient

19   opportunities to repair the Subject Vehicle.

20        10.   Plaintiffs brought the Subject Vehicle to Manufacturer's authorized dealers for repair on six

21   (6) occasions. (True and correct copies of the Subject Vehicle's repair orders are attached herein and

22   marked as Exhibit "B").

23        a.    July 13, 2020: Plaintiffs brought the Subject Vehicle to PACIFIC BMW located and doing

24        business at 800 South Brand Blvd., Glendale, CA, 91204. Plaintiffs brought the Subject

25        Vehicle in for repair because of issues with the engine, the battery, the air conditioning

26        system, and the comfort access system. The Subject Vehicle was at PACIFIC BMW's

27        place of business for a total of six (6) days. The Subject Vehicle had 3,662 miles on it at

28        the time of repair.

b.  March 17, 2021: Plaintiffs brought the Subject Vehicle to PACIFIC BMW located and doing business at 800 South Brand Blvd., Glendale, CA, 91204. Plaintiffs brought the Subject Vehicle in for repair because of issues with the key's battery, the cylinder head cover assembly, the crankcase vent valve, the right brake/taillight, the comfort access system, and the front left parking sensor. The Subject Vehicle was at PACIFIC BMW 's place of business for a total of eight (8) days. The Subject Vehicle had 10,246 miles on it at the time of repair.

c.  July 13, 2021: Plaintiffs brought the Subject Vehicle to PACIFIC BMW located and doing business at 800 South Brand Blvd., Glendale, CA, 91204. Plaintiffs brought the Subject Vehicle in for repair because of issues with the battery. The Subject Vehicle was at PACIFIC BMW 's place of business for one (1) day. The Subject Vehicle had 12,189 miles on it at the time of repair.

d.  June 19, 2021: Plaintiffs brought the Subject Vehicle to PACIFIC BMW located and doing business at 800 South Brand Blvd., Glendale, CA, 91204. Plaintiffs brought the Subject Vehicle in for repair because of issues with the battery. The Subject Vehicle was at PACIFIC BMW 's place of business for one (1) day. The Subject Vehicle had 12,396 miles on it at the time of repair.

e.  November 16, 2021: Plaintiffs brought the Subject Vehicle to PACIFIC BMW located and doing business at 800 South Brand Blvd., Glendale, CA, 91204. Plaintiffs brought the Subject Vehicle in for repair because of issues with the cigarette lighter fuse and the battery. The Subject Vehicle was at PACIFIC BMW's place of business for a total of eight (8) days. The Subject Vehicle had 18,575 miles on it at the time of repair.

f.  December 13, 2021: Plaintiffs brought the Subject Vehicle to CENTURY WEST BMW, LLC located and doing business at 4245 Lankershim Blvd., North Hollywood, CA, 91602. Plaintiffs brought the Subject Vehicle in for repair because of issues with the engine, the battery, and the lower radiator flap. The Subject Vehicle was at CENTURY WEST BMW's place of business for a total of five (5) days. The Subject Vehicle had 19,513 miles on it at the time of repair.

PLAINTIFF'S COMPLAINT FOR DAMAGES                    EXHIBIT A - 5

11. The Subject Vehicle has been at the dealership undergoing repairs for twenty-nine (29) days.

12. Manufacturer, through its authorized dealers, was unable and/or failed to repair the Subject Vehicle within a reasonable number of attempts.

13. As of the present date, the Subject Vehicle still has ongoing problems that were never resolved despite multiple repair attempts.

14. Manufacturer's authorized dealer's employees allegedly performed repairs and performed the complimentary vehicle inspection of the Subject Vehicle, but there was no change in the defective parts and the Subject Vehicle remains defective.

15. Plaintiffs justifiably lost confidence in the Subject Vehicle's reliability and said defects have substantially impaired the use, value, and/or safety of the Subject Vehicle to Plaintiffs.

16. Said defects could not have been discovered by Plaintiffs prior to Plaintiffs' acceptance of the Subject Vehicle.

17. As a result of said defects, Plaintiffs revoked acceptance of the Subject Vehicle in writing on January 10, 2022. (A true and correct copy of said letter is attached hereto and market Exhibit "C").

18. At the time of revocation, the Subject Vehicle was in substantially the same condition as at delivery except for damage caused by its own defects and ordinary wear and tear.

19. To-date, Manufacturer has failed to accept Plaintiffs' demand for revocation and has refused to provide Plaintiffs with the remedies Plaintiffs are entitled to upon revocation.

20. The Subject Vehicle remains in a defective and un-merchantable condition and continues to exhibit the above-mentioned defects that substantially impair its use, value, and/or safety.

21. Plaintiffs have and will continue to be financially damaged due to Manufacturer's failure to comply with the provisions of its express and implied warranties.

## FIRST CAUSE OF ACTION

### FRAUD AND DECEIT

*(Against All Defendants, Including Does 1 to 30)*

22. Plaintiffs re-allege and incorporate by reference as fully set forth herein all paragraphs of Plaintiffs' Complaint for Damages.

23. The particularity requirement for fraud requires the pleading of facts showing how, when,

where, to whom, and by what means the representations were made. (*Stansfield v. Starkey* (1990) 220 Cal.All.3d 59, 73.) Every element of fraud herein with specificity have been plead as follows:

    a.  How: Prior to Plaintiffs' visit to Manufacturer's authorized dealership BMW OF MONROVIA/MINI OF MONROVIA on May 20, 2020, Manufacturer represented to Plaintiffs that its vehicles were free from any latent defects. These representations were made in Manufacturer's New Vehicle Limited Warranty, as well as brochures, pamphlets, and other advertisement materials produced by Manufacturer.

    b.  When: At the time of leasing the Subject Vehicle (on May 20, 2020) and prior to Plaintiffs leasing the Subject Vehicle.

    c.  Where: The oral discussions about the safety, quality, and reliability of the Subject Vehicle took place on Manufacturer's website, in the New Vehicle Limited Warranty, in the owner's manual, as well as other brochures, pamphlets, and advertisement materials produced by Manufacturer.

    d.  To Whom: The representations regarding the Subject Vehicle were made to Plaintiffs.

    e.  What Means: The discussions were made by use of English language, simple words. Manufacturer used its online website as well as its Owner's Manuals and other pamphlets and brochures to represent the Subject Vehicle as being free of defects.

24.    The requirement of specificity in a fraud action against a corporation requires Plaintiffs to allege the names of persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written. *(Tarmann v. State Far Mut. Auto. Ins. Co.* (1991) 2 Cal.App.4th 153, 157.)

    a.  Names of Persons Who Made the Representations: The representations were written and designed by BMW, by and through its team of marketing personnel, including, but not limited to, Adam Sykes (Vice President of Corporate Communications) and Uwe Dreher (Vice President of Marketing). Other key members include Bernhard Kuhn (President and Chief Executive Officer of BMW NA) and David Duncan (Department Head, Corporate and Special Sales).

    b.  Authority to Speak: Manufacturer's online and TV advertisements all invite

consumers to visit one of Manufacturer's authorized dealerships and speak with a representative regarding their vehicles. The executives, by the very nature of their role within Manufacturer's company, had the authority to design and implement the fraudulent representations regarding the Subject Vehicle, implement procedures to train dealership personnel, and did do so in fact.

    c.  To Whom They Spoke: The representations regarding the Subject Vehicle were made to Plaintiffs.

    d.  What they Said or Wrote: Manufacturer represented to Plaintiffs that the Subject Vehicle is in excellent mechanical condition and free of any damage or defects. Manufacturer further represented that the Subject Vehicle was merchantable, safe, reliable, and fit for its ordinary purpose.

    e.  When It Was Said or Written: Prior to the time Plaintiffs leased the Subject Vehicle on May 20, 2020.

25.    Moreover, in line with *Committee on Children's Television, Inc. v General Foods Corp.*, 35 Cal.3d 197, 216 (1983), Manufacturer necessarily possesses full information concerning the facts of the herein controversy since Manufacturer designed the defective vehicles, trained all personnel on how to discuss the defects when the vehicles are brought in for repair, and advertised the Subject Vehicle to the public as safe, reliable, and fit for its ordinary purpose. Therefore, despite the heightened pleading standard in a fraud case, in the present matter Manufacturer is well aware of the entire chain of events which has culminated in this lawsuit.

26.    California Civil Code § 1710 identifies four kinds of fraud: (1) intentional misrepresentation, (2) concealment, (3) false promise, and (4) negligent misrepresentation.

27.    Here, the fraud at hand is intentional misrepresentation and concealment.

28.    **Intentional misrepresentation** occurs when (A) a Manufacturer represents to another that a fact was true; (B) the representation was actually false; (C) the Manufacturer knew the representation was false (or was reckless about its truth); (D) the Manufacturer intended the other person to rely on the statement; (E) the other person did rely on the statement; and (F) the other person was harmed by the reliance. See Civ. Code, § 1710(1); *Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.

A. On May 20, 2020, Manufacturer, by and through its agents, intentionally misrepresented material facts to Plaintiffs, including, but not limited to, the following:

- That the vehicle was in excellent mechanical condition.
- That the vehicle was functionable and reliable.
- That the vehicle was safe and fit for its ordinary purpose.
- That the vehicle had no latent defect(s).
- That the vehicle was merchantable.

B. The aforementioned representations are clearly false.

C. Manufacturer made these representations knowing that they were false or made them recklessly and without regard for their truth. Manufacturer had knowledge of these material facts through sources not available to Plaintiffs, including, but not limited to, pre-release testing data, early consumer complaints about the aforementioned defects, testing conducted in response to those complaints, aggregate data from Manufacturer's authorized dealers, including dealer repair orders and high warranty reimbursement rates that can cost in the thousand dollars for each vehicle, and from other internal sources.

- Manufacturer knew the representations made to Plaintiffs were false [and/or made the representations recklessly and without regard for its truth] because it knew the Subject Vehicle was defective and unmerchantable and therefore was not functionable, reliable, safe, fit for its ordinary purpose, or merchantable. Manufacturer knew this by having its experts inspect the Subject Vehicle before and after the vehicle acquisition and by running the vehicle history.
- Alternatively, in making such misrepresentations and committing such wrongful acts, Manufacturer acted with the conscious and reckless disregard to the truth or falsity of such misrepresentations and promises and wrongful acts. If Manufacturer did not know affirmatively that the Subject Vehicle was defective and unmerchantable and therefore was not functionable, reliable, safe, fit for its ordinary purpose, or merchantable, then it should not have stated otherwise.

D. Manufacturer intended for Plaintiffs to rely on the statement, and subsequently intended

to defraud Plaintiffs, since it wanted Plaintiffs to lease the Subject Vehicle despite its defects.

E. Plaintiffs reasonably relied on Manufacturer's assurances that the Subject Vehicle was functionable, reliable, safe, and fit for its ordinary purpose.

- Such reliance upon the misrepresentations, material omissions, and/or wrongful acts was justified and reasonable under the circumstances. Manufacturer is an established business with a positive reputation and a reassuring infrastructure which put Plaintiffs at ease. This gave Plaintiffs no reason to mistrust Manufacturer.

- The representation from Manufacturer was material – a reasonable person would find it important to know that the Subject Vehicle was defective and unmerchantable and was not functionable, reliable, safe, fit for its ordinary purpose, or merchantable. These factors affect the Subject Vehicle's reliability, lifespan, and value.

- The harm to Plaintiffs was not otherwise inevitable or due to unrelated causes because Plaintiffs would simply not have leased the vehicle at all and/or would have paid much less for the Subject Vehicle.

F. As a direct and proximate result of the acts and omissions of Manufacturer, Plaintiffs have suffered damages for which relief is sought herein. Specifically, damages include all monthly payments made on the Subject Vehicle, and any and all incidental and consequential damages, as a result of the lease, which would not have taken place but-for the fraudulent misrepresentations both prior to and at the time of lease including the money spent for the Subject Vehicles' repairs, storage, and/or towing, as well as the money spent on rental vehicles. Alternatively, Plaintiffs suffered damages in the amount of the difference between the Subject Vehicle and a similar vehicle that was in excellent mechanical condition and did not suffer from any defects, as represented to Plaintiffs, plus tax and licensing fees.

- Manufacturer intentionally misrepresented the Subject Vehicle. Plaintiffs are

-9-

therefore entitled to recission and restitution in an amount according to proof at trial.

- Plaintiffs now own a vehicle that has a diminished value as a result of Manufacturer's intentional misrepresentation of, and failure to timely disclose, the aforementioned defects and the serious safety and quality issues caused by Manufacturer's conduct.

- The value of the Subject Vehicle is diminished because any reasonable consumer will be reluctant to lease the Subject Vehicle for the same price upon an honest disclosure of its history and current condition.

- Manufacturer's conduct was oppressive, fraudulent, and malicious, and constitutes despicable conduct in conscious disregard for Plaintiffs' rights. Accordingly, Manufacturer is liable to Plaintiffs for their damages in an amount to be proven at trial, including, but not limited to, Plaintiffs' lost benefit of the bargain or overpayment for the Subject Vehicle at the time of the lease, the diminished value of the Subject Vehicle due to the aforementioned defects, and/or the costs incurred in storing, maintaining, or otherwise disposing of the Subject Vehicle.

29. **Concealment** exists where Manufacturer (A) concealed or suppressed a material fact; (B) had knowledge of this material fact; (C) that this material fact was not within reasonably diligent attention, observation, and judgment of Plaintiffs; (D) that Manufacturer suppressed or concealed this fact with the intention that Plaintiffs be misled as to the true condition of the property; (E) that Plaintiffs were reasonably so misled; and (F) that Plaintiffs suffered damage as a result.

A. On May 20, 2020, Manufacturer, by and through its agents, concealed, or suppressed material facts regarding the Subject Vehicle, including, but not limited to, the following:

- That the vehicle was not in excellent mechanical condition.

- That the vehicle was not functionable and reliable.

- That the vehicle was not safe and fit for its ordinary purpose.

- That the vehicle had latent defect(s).

- That the vehicle was unmerchantable.

EXHIBIT A - 11

B. Manufacturer made these representations knowing that they were false or made them recklessly and without regard for their truth. Manufacturer had knowledge of these material facts through sources not available to Plaintiffs, including, but not limited to, pre-release testing data, early consumer complaints about the aforementioned defects, testing conducted in response to those complaints, aggregate data from Manufacturer's authorized dealers, including dealer repair orders and high warranty reimbursement rates that can cost in the thousand dollars for each vehicle, and from other internal sources. Manufacturer had a duty to disclose the defects because it:

- Had exclusive and/or far superior knowledge and access to the facts, and knew the facts were not known to or reasonably discoverable by Plaintiffs;

- Intentionally concealed the foregoing from Plaintiffs;

- Made incomplete representations about the safety and reliability of the aforementioned defects, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

C. Manufacturer is an industry expert in manufacture, sale, and distribution of motor vehicles and related equipment and services and therefore had knowledge of material facts regarding the Subject Vehicle. These material facts were not within reasonably diligent attention, observation, and judgment of Plaintiffs because Plaintiffs have no professional expertise and very limited consumer experience in vehicle acquisition. Furthermore, Plaintiffs were not an expert in vehicle inspection.

D. Manufacturer intentionally concealed and suppressed these material facts to falsely assure Plaintiffs that the Subject Vehicle could perform safely, as represented by Manufacturer and reasonably expected by consumers.

- Manufacturer omitted these material facts, with the intention to deceive, defraud, and induce Plaintiffs into acting in reliance on the representations Manufacturer had made to Plaintiffs and to induce Plaintiffs to lease the Subject Vehicle.

- Manufacturer actively concealed or suppressed these material facts, in whole or in part, to maintain a market for its vehicles, to protect/maximize its profits, and to

-11-

avoid recalls that would hurt the Manufacturer's business and cost Manufacturer money. It did so at the expense of Plaintiffs.

E.  Plaintiffs were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed or suppressed facts. Had they been aware of the aforementioned defects in the Subject Vehicle, and Manufacturer's callous disregard for safety, Plaintiffs either would have paid much less for the Subject Vehicle, or they would not have leased it at all. Plaintiffs did not receive the benefit of the bargain as a result of Manufacturer's fraudulent concealment.

- These omitted and concealed facts were material because they would be relied on by a reasonable person purchasing, leasing, or retaining a new or used motor vehicle, and because they directly impact the value of the Subject Vehicle leased by Plaintiffs.

- Whether Manufacturer's vehicles are functionable, reliable, safe, and/or fit for their ordinary purpose and whether Manufacturer stands behind its vehicles, are material concerns to a consumer.

- Plaintiffs trusted Manufacturer not to lease them a vehicle that was defective or that violated federal law governing motor vehicle safety, and to uphold its recall obligations under the MVLA and governing laws. Plaintiffs had no reason to believe Manufacturer was hiding information during Plaintiffs' inquiry about these facts.

- Plaintiffs asked about these facts. Manufacturer lied, made misrepresentations, and did not disclose what it knew about the Subject Vehicle's history and condition.

F.  As a direct and proximate result of the acts and omissions of Manufacturer, Plaintiffs have suffered damages for which relief is sought herein. Specifically, damages include all monthly payments made on the Subject Vehicle, and any and all incidental and consequential damages, as a result of the lease, which would not have taken place but-for the fraudulent misrepresentations both prior to and at the time of lease, including the money spent for the Subject Vehicles' repairs, storage, and/or towing, as well as the money

EXHIBIT A - 13

spent on rental vehicles. Alternatively, Plaintiffs suffered damages in the amount of the difference between the Subject Vehicle and a similar vehicle that was in excellent mechanical condition and did not suffer from any defects, as represented to Plaintiffs, plus tax and licensing fees.

- Manufacturer committed concealment. Plaintiffs are therefore entitled to recission and restitution in an amount according to proof at trial.

- Plaintiffs now own a vehicle that has a diminished value because of Manufacturer's concealment of, and failure to timely disclose, the aforementioned defects, and the serious safety and quality issues caused by Manufacturer's conduct.

- The value of the Subject Vehicle is diminished because of the concealed negative facts about the value which will make any reasonable consumer reluctant to lease the vehicle for the same price as paid by Plaintiffs.

- Manufacturer's conduct was oppressive, fraudulent, and malicious, and constitutes despicable conduct in conscious disregard for Plaintiffs' rights. Accordingly, Manufacturer is liable to Plaintiffs for their damages in an amount to be proven at trial, including, but not limited to, Plaintiffs' lost benefit of the bargain or overpayment for the Subject Vehicle at the time of the lease, the diminished value of the Subject Vehicle due to the aforementioned defects, and/or the costs incurred in storing, maintaining, or otherwise disposing of the Subject Vehicle.

### SECOND CAUSE OF ACTION
### BREACH OF WRITTEN WARRANTY
### PURSUANT TO THE MAGNUSON-MOSS WARRANTY ACT
*(Against All Defendants, Including Does 1 to 30)*

30. Plaintiffs re-allege and incorporate by reference as fully set forth herein, all paragraphs of Plaintiffs' Complaint for Damages.

31. Plaintiffs leased a consumer product and received the Subject Vehicle during the duration of a written warranty period as defined in 15 U.S.C. § 2301(6) applicable to the Subject Vehicle and is

-13-

1    entitled by the terms of the written warranty to enforce against Manufacturer the obligations of said

2    warranty.

3        32.    Manufacturer is a business entity engaged in the business of making a consumer product

4    directly available to Plaintiffs.

5        33.    The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* ("Warranty Act") is applicable

6    to Plaintiffs' Complaint in that the Subject Vehicle was manufactured and leased after July 4, 1975, and

7    costs in excess of ten dollars ($10.00).

8        34.    Plaintiffs' acquisition of the Subject Vehicle was accompanied by written factory warranties

9    for any non-conformities or defects in materials or workmanship, comprising an undertaking in writing

10   in connection with the lease of the Subject Vehicle to repair the Subject Vehicle or take other remedial

11   action free of charge to Plaintiffs with respect to the Subject Vehicle if the Subject Vehicle failed to meet

12   the specifications set forth in said undertaking.

13       35.    Said warranties were the basis of the bargain of the contract between Plaintiffs and

14   Manufacturer for the lease of the Subject Vehicle to Plaintiffs by and through Manufacturer's authorized

15   dealers.

16       36.    Said acquisition of Plaintiffs' Subject Vehicle was induced by, and Plaintiffs relied upon,

17   these written warranties.

18       37.    Plaintiffs have met all of Plaintiffs' obligations and preconditions as provided in the written

19   warranties.

20       38.    Manufacturer's tender of the Subject Vehicle was substantially impaired to Plaintiffs.

21       39.    Manufacturer's tender of the Subject Vehicle, which was substantially impaired to Plaintiffs,

22   constitutes a violation of 15 U.S.C. § 2301 *et seq.*

23       40.    As a direct and proximate result of Manufacturer's failure to comply with its express written

24   warranties, Plaintiffs have suffered damages and, in accordance with 15 U.S.C. § 2310(d), Plaintiffs are

25   entitled to bring suit for such damages and other equitable relief.

26   ///

27   ///

28   ///

EXHIBIT A - 15

## THIRD CAUSE OF ACTION

### BREACH OF IMPLIED WARRANTY

### PURSUANT TO THE MAGNUSON-MOSS WARRANTY ACT

*(Against All Defendants, Including Does 1 to 30)*

41.   Plaintiffs re-allege and incorporate by reference as fully set forth herein, all paragraphs of Plaintiffs' Complaint for Damages.

42.   The Subject Vehicle acquired by Plaintiffs was subject to an implied warranty of merchantability as defined in 15 U.S.C. § 2301(7) running from Manufacturer to the intended consumer, Plaintiffs herein.

43.   Manufacturer is a supplier of consumer goods as a business entity engaged in the business of making a consumer product directly available to Plaintiffs.

44.   Pursuant to 15 U.S.C. § 2308(a), Manufacturer is prohibited from disclaiming or modifying any implied warranty when making a written warranty to the consumer or when Manufacturer has entered into a contract in writing within ninety (90) days of sale to perform services relating to the maintenance or repair of a motor vehicle.

45.   Plaintiffs' Subject Vehicle was impliedly warranted to be substantially free of defects and non-conformities in both material and workmanship, and thereby fit for the ordinary purpose for which the Subject Vehicle was intended.

46.   The Subject Vehicle was warranted to pass without objection in the trade under the contract description and was required to conform to the descriptions of the vehicle contained in the contracts and labels.

47.   The above-described defects in the Subject Vehicle render the Subject Vehicle unfit for the ordinary and essential purpose for which the Subject Vehicle was intended.

48.   Manufacturer's tender of the Subject Vehicle, which was substantially impaired to Plaintiffs, constitutes a violation of 15 U.S.C. § 2301 *et seq.*

49.   Any efforts to limit the implied warranties in a manner that would exclude coverage of the Subject Vehicle is unconscionable, and any such effort to disclaim, or otherwise limit, liability for the Subject Vehicle is null and void.

50. Any limitations on the warranties are procedurally unconscionable. There was unequal bargaining power between Manufacturer, on the one hand, and Plaintiffs, on the other.

51. Any limitations on the warranties are substantively unconscionable. Manufacturer knew that the Subject Vehicle was defective and would continue to pose a safety risk after the warranties purportedly expired. Manufacturer failed to disclose the aforementioned defects to Plaintiffs. Thus, Manufacturer's enforcement of the durational limitations on those warranties is harsh and shocks the conscience.

52. Plaintiffs have had sufficient direct dealings with either Manufacturer or its agents (Manufacturer's authorized dealers) to establish privity of contract.

53. Nonetheless, privity is not required here because Plaintiffs are an intended third-party beneficiary of contracts between Manufacturer and its dealers, and specifically, of the implied warranties. The dealers were not intended to be the ultimate consumers of the Subject Vehicle and have no rights under the warranty agreements provided with the Subject Vehicle; the warranty agreements were designed for and intended to benefit consumers. Finally, privity is also not required because the Subject Vehicle is a dangerous instrumentality due to the aforementioned defects.

54. Plaintiffs provided written notice of breach to Manufacturer and a request to cure. Nonetheless, as a direct and proximate result of Manufacturer's failure to comply with its implied warranties, Plaintiffs have suffered damages and, in accordance with 15 U.S.C. § 2310(d), Plaintiffs are entitled to bring suit for such damages and other equitable relief.

55. Furthermore, affording Manufacturer an opportunity to cure its breach of written warranties would be unnecessary and futile here. At the time of lease of the Subject Vehicle, Manufacturer knew, should have known, or was reckless in not knowing of its misrepresentations concerning the Subject Vehicle's inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Manufacturer a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

56. Plaintiffs provided written notice of breach of implied warranties and related consumer

1     protection laws, and opportunity to cure, via a letter to Manufacturer.

2     57.   Plaintiffs would suffer economic hardship if they returned the Subject Vehicle but did not

3     receive the return of all payments made by them. Because Manufacturer is refusing to acknowledge any

4     revocation of acceptance and return immediately any payments made, Plaintiffs have not re-accepted

5     Manufacturer's Defective Vehicle by retaining it.

6                                **FOURTH CAUSE OF ACTION**

7                            BREACH OF WRITTEN WARRANTY

8            PURSUANT TO THE SONG-BEVERLY CONSUMER WARRANTY ACT

9                         *(Against All Defendants, Including Does 1 to 30)*

10    58.   Plaintiffs re-allege and incorporate by reference as fully set forth herein, all paragraphs of

11    Plaintiffs' Complaint for Damages.

12    59.   Manufacturer is the warrantor of the Subject Vehicle's express warranty.

13    60.   Pursuant to the Subject Vehicle's express warranty, Manufacturer undertook to preserve or

14    maintain the utility or performance of the Subject Vehicle or provide compensation if there was a failure

15    in such utility or performance.

16    61.   The Subject Vehicle has and has had serious defects and nonconformities to warranty

17    including, but not limited to, the defects described above.

18    62.   Under the Song-Beverly Consumer Warranty Act (the "California Lemon Law"), the Subject

19    Vehicle is a "consumer good" leased primarily for family or household purposes and Plaintiffs have used

20    the Subject Vehicle primarily for those purposes.

21    63.   Plaintiffs are "buyers" of consumer goods under the California Lemon Law.

22    64.   The foregoing defects and nonconformities to warranty manifested themselves within the

23    applicable express warranty period. The nonconformities substantially impair the use, value, and/or safety

24    of the Subject Vehicle.

25    65.   Pursuant to Cal. Civ. Code § 1793.2(c), Plaintiffs have delivered the Subject Vehicle to the

26    Manufacturer's service and repair facilities within this state and/or other authorized service dealers of

27    Manufacturer within the terms of protection and has tendered the Subject Vehicle for repairs of the above-

28    mentioned defects that substantially affect the use, value and safety of the Subject Vehicle.

66. Manufacturer, through its service and repair facilities and/or other authorized dealership has been unable to repair the said defects in a reasonable number of attempts.

67. By failure of Manufacturer to remedy the defects as alleged above, or to issue a refund or replacement, Manufacturer is in breach of its obligations under the California Lemon Law.

68. Plaintiffs are entitled to justifiably revoke acceptance of the Subject Vehicle under the California Lemon Law

69. Pursuant to Cal. Civ. Code § 1793.2(d), Plaintiffs are entitled to a refund of the total cost under the sale contract, including all collateral charges such as sales tax, license fees, registration fees, and other official fees, plus any incidental damages including, but not limited to, reasonable repair, towing, and rental car costs actually incurred by Plaintiffs.

70. Pursuant to Cal. Civ. Code § 1794, Plaintiffs are entitled to recover a sum equal to the aggregate amount of costs and expenses, including attorney's fees reasonably incurred.

71. Manufacturer has willfully violated the provisions of this act by knowing of its obligations to refund or replace Plaintiffs' Subject Vehicle but failing to fulfill them.

**FIFTH CAUSE OF ACTION**

BREACH OF IMPLIED WARRANTY

PURSUANT TO THE SONG-BEVERLY CONSUMER WARRANTY ACT

*(Against All Defendants, Including Does 1 to 30)*

72. Plaintiffs re-allege and incorporate by reference as fully set forth herein, all paragraphs of Plaintiffs' Complaint for Damages.

73. The Subject Vehicle acquired by Plaintiffs was subject to an implied warranty of merchantability as defined in Cal Civ. Code. § 1790 *et seq.* running from Manufacturer to the intended consumer, Plaintiffs herein.

74. The implied warranty of merchantability means and includes that the goods will comply with each of the following requirements: (1) they would pass without objection in the trade under the contract description; (2) they are fit for the ordinary purposes for which such goods are used; (3) they are adequately contained, packaged, and labeled; and (4) they conform to the promises or affirmations of fact made on the container or label.

75. Manufacturer is a supplier of consumer goods as a business entity engaged in the business of making a consumer product directly available to Plaintiffs.

76. Manufacturer is prohibited from disclaiming or modifying any implied warranty under Cal. Civ. Code § 1790 *et seq.*

77. Pursuant to Cal. Civ. Code § 1790 *et seq.*, Plaintiffs' Subject Vehicle was impliedly warranted to be fit for the ordinary use or which the Subject Vehicle was intended.

78. The Subject Vehicle was warranted to pass without objection in the trade under the contract description and was required to conform to the descriptions of the vehicle contained in the contracts and labels.

79. Because the Subject Vehicle was leased to Plaintiffs with serious defects that manifested themselves within the period of the implied warranty and which substantially reduce its safety and performance, it (1) would not pass without objection in the trade under the contract description; (2) was and is not fit for the ordinary purposes for which such goods are used; (3) was not adequately contained, packaged, and labeled; and (4) did not conform to the promises or affirmations of fact made on the container or label.

80. The above-described defects in the Subject Vehicle caused it to fail to possess the most basic degree of fitness for ordinary use.

81. Plaintiffs have rightfully rejected and/or justifiably revoked acceptance of the Subject Vehicle and is entitled under the California Lemon Law to rescind the lease agreement and to restitution of all money paid towards the lease agreement. This Complaint also, again, hereby rejects and revokes acceptance of the Subject Vehicle.

82. As a result of the breach of implied warranty by Manufacturer, Plaintiffs have suffered and continues to suffer various damages.

## SIXTH CAUSE OF ACTION

### VIOLATION OF BUSINESS & PROFESSIONS CODE § 17200, ET SEQ.

*(Against All Defendants, Including Does 1 to 30)*

83. Plaintiffs re-allege and incorporate by reference as fully set forth herein all paragraphs of Plaintiffs' Complaint for Damages.

84.   Plaintiffs have standing to bring this claim because they have lost money or property as a result of the alleged misconduct.

85.   A plaintiff has standing when he or she (1) loses or is deprived of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) the economic injury was the result of, i.e., caused by, the unfair business practice of false advertising that is the gravamen of the claim. *Kwikset Corp. v. Superior Court* (201) 51 Cal.4th 310, 322.

86.   Economic injury from unfair competition exists if a plaintiff (1) surrenders in a transaction more, or acquires in a transaction less, than he or she otherwise would have; (2) has a present or future property interest diminished; (3) is deprived of money or property to which he or she has a cognizable claim; or (4) is required to enter into a transaction, costing money or property, that would otherwise have been unnecessary. *Id.* at 323.

87.   *Business & Professions Code § 17200, et seq.* prohibits any unlawful, unfair, or fraudulent business act or practice. It also prohibits unfair, deceptive, untrue, or misleading advertising.

88.   The **unlawful** prong "borrows violations of other laws and treats them as independently actionable." See *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal.App.4th 824, 837, 51 Cal.Rptr.3d 118 (2006). Manufacturer has engaged in unlawful business acts and practices by: (1) selling defective vehicles to the public while misrepresenting their condition; and (2) concealing and failing to disclose a known defect. These acts and practices were intended to and did violate several laws, including, but not limited to, California Civil Code Section 1709 *et seq.* and the Lemon Law.

- California Civil Code § 1709 states that "one who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." Here, Manufacturer violated California Civil Code § 1709 in that Manufacturer intentionally misrepresented the safety and reliability of the Subject Vehicle to induce Plaintiffs' lease of the Subject Vehicle. Plaintiffs would not have leased the Subject Vehicle but for Manufacturer's assurances that the Subject Vehicle was merchantable, safe, reliable, and fit for its ordinary purpose.

89.   The **unfair** prong requires alleging a practice that "offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Bardin v. Daimler*

*Chrysler Corp.*, 136 Cal.App.4th 1255, 1263, 1266, 39 Cal.Rptr.3d 634 (2006). Manufacturer engaged in unfair business acts or practices in that the justification for selling and leasing vehicles based on the misrepresentations and omissions of material fact delineated above is outweighed by the gravity of the resulting harm, particularly considering the available alternatives, and offends public policy, is immoral, unscrupulous, unethical, and offensive, or causes substantial injury to consumers.

- A business act is **unfair** if (1) the consumer injury is substantial, (2) the injury is not outweighed by any countervailing benefits to consumers or competition, and (3) the injury could not reasonably have been avoided by consumers themselves.

- Here, Plaintiffs' injury is substantial since Plaintiffs would not have otherwise leased the Subject Vehicle had they known the Subject Vehicle was not safe, not reliable, and not fit for its intended purpose. Plaintiffs have further been damaged in that they have paid out of pocket expenses to repair, tow, and otherwise store the Subject Vehicle as well as paid money towards a rental vehicle while the Subject Vehicle was nonoperational.

- Plaintiffs' injury is not outweighed by any countervailing benefits to consumers or competition. There were reasonably available alternatives to further Manufacturer's legitimate business interests, other than the conduct described herein.

- Plaintiffs specifically inquired about the Subject Vehicle's condition and whether it was free from defects. Manufacturer knowingly and/or recklessly lied to Plaintiffs to induce the lease of the Subject Vehicle. Plaintiffs' injury, therefore, could not reasonably have been avoided by Plaintiffs.

90.    The **fraudulent** prong "requires a showing [that] members of the public are likely to be deceived." *Wang v. Massey Chevrolet*, 97 Cal.App.4th 856, 871, 118 Cal.Rptr.2d 770 (2002). Manufacturer engaged in fraudulent business acts or practices in that the representations and omissions of material fact described above have a tendence and likelihood to deceive buyers of these vehicles and the general public.

- An advertisement or promotional practice is likely to deceive if it includes assertions that are (1) untrue, or (2) "'true [, but] are either actually misleading or which [have] the capacity, likelihood or tendency to deceive or confuse the public.' [Citation]." (*Kasky v. Nike, Inc.*

(2002) 27 Cal.4th 939, 951; *Leoni v. State Bar* (1985) 39 Cal.3d 609, 626.)

- Here, Manufacturer's practice of misrepresenting the safety and reliability of its vehicles is likely to deceive members of the public because the statements are untrue. It is inconceivable to think that consumers will be able to see through Manufacturer's misrepresentations and know that Manufacturer's vehicles are not safe, not reliable, and not fit for their intended purpose.

91.    The business scheme employed by Manufacturer is unlawful, unfair, and fraudulent because it is purposely concealing information about the aforementioned defects so that consumers, like Plaintiffs, will purchase and/or lease the Subject Vehicle, which is neither functionable, reliable, safe, nor fit for its ordinary purpose.

92.    Manufacturer deceived Plaintiffs by failing to disclose the aforementioned defects and inducing the lease of the Subject Vehicle.

93.    Manufacturer has every intention of deceiving and injuring consumers. If it did not, then Manufacturer would not be so immoral, unethical, oppressive, unscrupulous, and deceptive when it comes to the defective Subject Vehicle.

94.    The business scheme deployed by Manufacturer to deceive Plaintiffs into leasing the Subject Vehicle with the aforementioned defects is unlawful, unfair, and fraudulent.

95.    Plaintiffs surrendered more in the transaction because they bought a vehicle that was defective. Had Plaintiffs been aware of the aforementioned defects, they would not have acquired the Subject Vehicle in the first place and/or at least paid less for the Subject Vehicle. As such, Plaintiffs have established a loss or deprivation of money or property sufficient to qualify as injury in fact. *Kwikset Corp. v. Superior Court* (2011) 52 Cal.4th 310, 323.

96.    Manufacturer commits these acts with the conscious and reckless disregard to the truth or falsity of such misrepresentations and promises and wrongful acts in violation of the *Business & Professions Code § 17200, et seq.*

97.    The acts of Manufacturer as herein described, present a continuing threat to members of the general public in that Manufacturer continues to engage in these deceptive practices and will not cease doing so unless and until an injunction is issued by this Court.

DocuSign Envelope ID: 0D1468AC-83EC-4896-A173-B7FFE5F23A7B

98. If Manufacturer is allowed to continue to engage in these deceptive practices other consumers will also purchase and/or lease defective vehicles putting themselves and others on the road in extreme danger.

99. As a direct result of the aforementioned acts, Manufacturer unlawfully, unfairly, and unjustly collected and continues to hold revenues and profits derived directly or indirectly from Plaintiffs, who have been victimized by the practices challenged herein. Manufacturer failed to disgorge and/or waive any of these revenues that do not properly belong to it.

100. In accordance with the provisions of *Business & Professions Code §§ 17200 and 17203*, Plaintiffs are entitled to an order enjoining the unlawful, unfair, deceptive, and/or fraudulent acts as described herein, and directing Manufacturer to make full restitution to Plaintiffs, who have suffered from such acts.

101. As a direct and proximate result of the acts and omissions of Manufacturer, Plaintiffs have suffered damages for which relief is sought herein.

102. Specifically, damages include all monthly payments made on the Subject Vehicle, and any and all incidental and consequential damages as a result of the lease, which would not have taken place but-for the fraudulent misrepresentations both prior to and at the time of lease, including the money spent for the Subject Vehicles' repairs, storage, and/or towing, as well as the money spent on rental vehicles. Alternatively, Plaintiffs suffered damages in the amount of the difference between the Subject Vehicle and a similar vehicle that was in excellent mechanical condition and did not suffer from any defects, as represented to Plaintiffs, plus tax and licensing fees.

## SEVENTH CAUSE OF ACTION

VIOLATION OF BUSINESS & PROFESSIONS CODE § 17500, ET SEQ.

*(Against All Defendants, Including Does 1 to 30)*

103. Plaintiffs re-allege and incorporate by reference as fully set forth herein all paragraphs of Plaintiffs' Complaint for Damages.

104. Plaintiffs have standing to bring this claim because they have lost money or property as a result of the misconduct alleged.

105. *Business & Professions Code § 17500, et seq.* prohibits unfair, deceptive, untrue, or

-23-
PLAINTIFF'S COMPLAINT FOR DAMAGES

1    misleading communications and statements, including, but not limited to, false statements as to the nature

2    of services to be provided.

3    106.    The business scheme employed by Manufacturer is unfair, deceptive, untrue, and misleading

4    because it is taking advantage of its status as an expert in the industry and selling vehicles to consumers

5    who are unaware, and have no reason to be aware, that the vehicles are in fact defective.

6    107.    Manufacturer deceived Plaintiffs by designing, manufacturing, producing, distributing, selling

7    and/or leasing the Subject Vehicle with the aforementioned defects.

8    108.    Manufacturer intentionally made the previously alleged misrepresentations and promises,

9    devised, and executed a scheme to defraud Plaintiffs, and did so resulting in damage to Plaintiffs with the

10   conscious and reckless disregard to the truth or falsity of such their misrepresentations and promises and

11   wrongful acts.

12   109.    In acting so, Manufacturer committed acts of untrue and misleading advertising as defined in

13   *Business and Professions Code § 17500*, by advertising their services contrary to their true nature.

14   110.    Manufacturer knew, or should have known, that the Subject Vehicle was defective and

15   unmerchantable and therefore was not functionable, reliable, safe, or even fit for its ordinary purpose.

16   111.    Plaintiffs did in fact rely on Manufacturer's deceptive, untrue, and misleading

17   communications and statements and suffered damages as a direct result. Specifically, Manufacturer's

18   deceptive, untrue, and misleading communications and statements tricked Plaintiffs into leasing the

19   Subject Vehicle. As such, Plaintiffs have established a loss or deprivation of money or property sufficient

20   to qualify as injury in fact. *Kwikset Corp. v. Superior Court* (2011) 52 Cal.4th 310, 323.

21   112.    Plaintiffs' reliance on the representations was justified and reasonable because Manufacturer

22   is an expert in the industry. There was no reason for Plaintiffs to know that the Subject Vehicle was

23   defective and unmerchantable and therefore was not functionable, reliable, safe, or even fit for its ordinary

24   purpose.

25   113.    Manufacturer's unfair, deceptive, untrue, and misleading communications and advertising

26   described above present a continuing threat to members of the general public in that Manufacturer will

27   continue to engage in these practices with respect to the general public and will not cease doing so unless

28   and until an injunction is issued by this Court.

114. If Manufacturer is allowed to continue to engage in these deceptive practices more consumers will purchase and/or lease defective vehicles putting more and more people in extreme danger.

115. As a direct result of the aforementioned acts, Manufacturer has received, and continue to unjustly hold, collect, or accept revenues derived directly or indirectly from Plaintiffs, through untrue and misleading representations and advertising.

116. In accordance with the provisions of *Business and Professions Code §§ 17500 and 17535*, Plaintiffs are entitled to an order enjoining the acts of untrue and misleading advertising and representations described herein and directing Manufacturer to make full restitution to Plaintiffs, who suffered from such acts.

117. As a direct and proximate result of the acts and omissions of Manufacturer, Plaintiffs have suffered damages for which relief is sought herein.

118. Specifically, damages include all monthly payments made on the Subject Vehicle, and any and all incidental and consequential damages as a result of the lease, which would not have taken place but-for the fraudulent misrepresentations both prior to and at the time of lease, including the money spent for the Subject Vehicles' repairs, storage, and/or towing, as well as the money spent on rental vehicles. Alternatively, Plaintiffs suffered damages in the amount of the difference between the Subject Vehicle and a similar vehicle that was in excellent mechanical condition and did not suffer from any defects, as represented to Plaintiffs, plus tax and licensing fees.

### EIGHTH CAUSE OF ACTION

### NEGLIGENCE

*(Against All Defendants, Including Does 1 to 30)*

119. Plaintiffs re-allege and incorporate by reference as fully set forth herein all paragraphs of Plaintiffs' Complaint for Damages.

120. At all times mentioned herein, Manufacturer was engaged in the business of designing, manufacturing, testing, distributing, selling, inspecting, repairing, marketing, constructing, labeling, and advertising of the Subject Vehicle.

121. At all times mentioned herein, Manufacturer had a duty of care in the designing, manufacturing, testing, distributing, selling, inspecting, repairing, marketing, constructing, labeling, and

1    advertising of the Subject Vehicle.

2        122.    At all times herein mentioned, Manufacturer had a duty to warn all users of its vehicles of the

3    attendant risks of harm, said risks of harm being at all times known and/or foreseeable to Manufacturer.

4        123.    At all times herein mentioned, Manufacturer knew, or in the exercise of reasonable care should

5    have known, that if the Subject Vehicle was not properly designed, manufactured, tested, distributed,

6    sold, inspected, repaired, marketed, constructed, and labeled, for the use and purpose for which the

7    Subject Vehicle was intended, the Subject Vehicle was likely to cause injuries to owners, passengers, and

8    users of the Subject Vehicle.

9        124.    Since the date of lease, Plaintiffs have used the Subject Vehicle in the way it was intended to

10   be used. At that time and prior thereto, Manufacturer negligently and carelessly manufactured, designed,

11   constructed, equipped, tested, installed, repaired, assembled, maintained, and handled the Subject Vehicle

12   so that it was defective and unsafe when used and operated in the manner for which it was intended.

13       125.    The Subject Vehicle's defects existed at the time it left Manufacturer's control.

14       126.    As a direct and legal result of the Subject Vehicle's defects, Plaintiffs were injured by the

15   Subject Vehicle while it was being used in the manner for which it was intended, the risk of which was

16   at all times known and foreseeable to Manufacturer.

17       127.    As a direct and proximate result of the acts and omissions of Manufacturer, Plaintiffs have

18   suffered damages for which relief is sought herein.

19       128.    Specifically, damages include all monthly payments made on the Subject Vehicle, and any

20   and all incidental and consequential damages as a result of the lease, which would not have taken place

21   but-for the fraudulent misrepresentations both prior to and at the time of lease, including the money spent

22   for the Subject Vehicles' repairs, storage, and/or towing, as well as the money spent on rental vehicles.

23   Alternatively, Plaintiffs suffered damages in the amount of the difference between the Subject Vehicle

24   and a similar vehicle that was in excellent mechanical condition and did not suffer from any defects, as

25   represented to Plaintiffs, plus tax and licensing fees.

26   ///

27   ///

28   ///

### NINTH CAUSE OF ACTION

### STRICT LIABILITY

*(Against All Defendants, Including Does 1 to 30)*

129.    Plaintiffs re-allege and incorporate by reference as fully set forth herein all paragraphs of Plaintiffs' Complaint for Damages.

130.    The Subject Vehicle was defective in its design and/or its manufacture.

131.    BMW OF NORTH AMERICA, LLC was the manufacturer of the Subject Vehicle.

132.    The Subject Vehicle's defects existed when it left Manufacturer's possession.

133.    The defects were the cause of Plaintiffs' injury.

134.    Plaintiffs' injury resulted from their reasonably foreseeable use of the Subject Vehicle.

135.    As a direct and proximate result of the acts and omissions of Manufacturer, Plaintiffs have suffered damages for which relief is sought herein.

136.    Specifically, damages include all monthly payment on the Subject Vehicle, and any and all incidental and consequential damages as a result of the lease, which would not have taken place but-for the fraudulent misrepresentations both prior to and at the time of lease, including the money spent for the Subject Vehicles' repairs, storage, and/or towing, as well as the money spent on rental vehicles. Alternatively, Plaintiffs suffered damages in the amount of the difference between the Subject Vehicle and a similar vehicle that was in excellent mechanical condition and did not suffer from any defects, as represented to Plaintiffs, plus tax and licensing fees.

### PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for judgment as follows:

- For recovery of the greater of actual damages according to proof, if adequate, as appropriate;

- For recovery of all incidental damages, as appropriate;

- For recovery of all consequential damages, as appropriate;

- For restitution, as appropriate;

- For injunctive relief, as appropriate;

- For recovery of interest at the legal rate, as appropriate;

1    • For recovery for all reasonable attorney's fees and the aggregate amount of costs

2       reasonably incurred pursuant to California's Private Attorney General Statute, *California*

3       *Code of Civil Procedure § 1021.5*, as appropriate; or

4    • Recovery for all reasonable attorney's fees and the aggregate amount of costs reasonably

5       incurred pursuant to *California Code of Civil Procedure § 1794*;

6    • For reasonable attorney's fees and costs under *California Code of Civil Procedure §*

7       *1780(e)*;

8    • For refund of all monies paid for the Subject Vehicle including all collateral charges and

9       incidental damages pursuant to *California Code of Civil Procedure § 1793.2(d)*;

10   • A civil penalty not to exceed two times the amount of actual damages pursuant to

11      *California Code of Civil Procedure § 1794(c)*;

12   • For refund of all monies paid for the Subject Vehicle pursuant to 15 U.S.C. § 2304(a)(4);

13   • For refund of all incidental and consequential damages incurred pursuant to 15 U.S.C. §

14      2304(a)(3);

15   • For recovery for all reasonable attorney's fees and the aggregate amount of costs

16      reasonably incurred pursuant to 15 U.S.C. § 2310(d)(2).

17   **PLAINTIFFS HEREBY REQUEST A JURY TRIAL IN THIS MATTER**

18   DATED:   2/22/2022                          THE MARGARIAN LAW FIRM
                                                  801 North Brand Boulevard, Suite 210
19                                                Glendale, CA 91203

20                                                ┌─DocuSigned by:

21                                                By  *Hovanes Margarian*
                                                  └─349B6A1FD3DO443...
22                                                Hovanes Margarian
                                                  Attorney for Plaintiffs
23                                                ROBERT GOUKASIAN
                                                  SOFIA GOUKASIAN

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT A**

PLAINTIFF'S COMPLAINT FOR DAMAGES

EXHIBIT A - 30

# BMW Financial Services NA, LLC – LEASE AGREEMENT
## Motor Vehicle Lease Agreement (Closed End) - California

DEAL# 631649
STK # LGL17154
CUST# 82015
FORM# 55145   SA467S-FI

## 1. PARTIES

| Lessor (Center) Name and Address | Lessee and Co-Lessee Name and Address | Vehicle Garaging Address (if Different) |
|---|---|---|
| BMW/MINI OF MONROVIA<br>1425 S MOUNTAIN AVE<br>MONROVIA CA 91016 | SOFIA GOUKASIAN<br><br>ROBERT GOUKASIAN | N/A<br><br>**Billing Address (if Different)**<br>N/A |

**THERE IS NO COOLING OFF PERIOD.** California law does not provide for a "cooling off" or other cancellation period for vehicle leases. Therefore, you cannot later cancel this lease simply because you change your mind, decided the vehicle costs too much or wish you had acquired a different vehicle. You may cancel this lease only with the agreement of the lessor or for legal cause, such as fraud.

**2. Agreement to Lease.** This Motor Vehicle Lease Agreement ("Lease") is entered into between the lessee and co-lessee ("Lessee") and the lessor ("Lessor") named above. Unless otherwise specified, "I," "me" and "my" refer to the Lessee and "you" and "your" refer to the Lessor or Lessor's assignee. "Vehicle" refers to the leased vehicle described below. "Assignee" refers to BMW Financial Services NA, LLC ("BMW FS") or, if this box is checked ☐ to Financial Services Vehicle Trust. BMW FS will administer this Lease on behalf of itself or any assignee. The consumer lease disclosures contained in this Lease are made on behalf of Lessor and its successors or assignees.

**3. Date of Lease, Lease Term and Scheduled Maturity Date.** This Lease is entered into on __05/20/2020__ for the scheduled Lease Term of ____36____ months with a Scheduled Maturity Date of __05/19/2023__

## 4. VEHICLE DESCRIPTIONS

| A. Leaded Vehicle<br>☒ New  ☐ Demo<br>☐ Used | Model Year<br>2020 | Make & Model<br>BMW<br>740I | VIN<br>WBA7T2C02LGL17154 | | Odometer<br>17 | Primary ☒ Personal, Family or Household<br>Use: ☐ Business, Commercial or<br>Agricultural |
|---|---|---|---|---|---|---|
| ☐ Telephone | ☐ CD Player | ☐ N/A (specify) | ☐ N/A | (specify) | ☐ N/A | (specify) |
| B. Trade-In | Model Year<br>N/A | Make<br>N/A | Model<br>N/A | Agreed Upon Value<br>N/A | Prior Credit or Lease Balance<br>N/A | Net Trade-In Value<br>N/A |

This box is for use by original Lessor and me to memorialize trade-in, turn-in and other individualized agreements. If none, enter "None" or "N/A". Assignee will not be obligated for agreements disclosed in this box.

> Lessee agrees that if this lease cannot be assigned by Lessor to a financial institution with whom it regularly does business on terms acceptable to Lessor, and Lessor gives notice to Lessee within 10 days, this Lease will be rescinded. Lessee must then return the vehicle to Lessor in good condition and Lessor will then return all consideration paid.

| SIGNING OR DELIVERY (Itemized in Section 9) | | 5. OTHER CHARGES (Not part of my Monthly Payments) | | 6. TOTAL OF PAYMENTS (The amount I will have paid by the end of the Lease Term) |
|---|---|---|---|---|
| | My first monthly payment of $ **775.87** is due on **05/20/2020** followed by **35** payments of $ **775.87** due on the **19th** day of each month. The total of my monthly payments is $ **27931.32**. | A. Disposition Fee (if I do not purchase the Vehicle) $ **350**<br>B. **N/A** $ **N/A**<br><br>TOTAL $ **350** | | |
| $ **5275.87** | | | | $ **32781.32** |

## 9. ITEMIZATION OF AMOUNT DUE AT LEASE SIGNING OR DELIVERY

**A. Amount Due at Lease Signing or Delivery**

| | | |
|---|---|---|
| 1. Capitalized Cost Reduction | $ | 2365.33 |
| 2. First Monthly Payment | $ | 775.87 |
| 3. Refundable Security Deposit | $ | N/A |
| 4. Initial Title Fees | $ | N/A |
| 5. Initial Registration Fees | $ | 309.00 |
| 6. Initial License Fees | $ | 458.00 |
| 7. Sales/Use Tax | $ | 95.96 |
| 8. Acquisition Fee (if not capitalized) | $ | 925.00 |
| 9. Electronic Vehicle Registration or Transfer Charge (not a governmental fee) (if not capitalized) Paid to: **AVRS** | $ | 30.00 |
| 10. Sales Tax on Capitalized Cost Reduction | $ | 224.71 |
| 11. Document Processing Fee (not a governmental fee) (if not capitalized) | $ | 85.00 |
| 12. California Tire Fee | $ | 7.00 |
| 13. Theft Deterrent Device | $ | N/A |
| 14. Theft Deterrent Device | $ | N/A |
| 15. Surface Protection Product | $ | N/A |
| 16. Surface Protection Product | $ | N/A |
| 17. N/A | $ | N/A |
| 18. N/A | $ | N/A |
| 19. N/A | $ | N/A |
| 20. N/A | $ | N/A |
| TOTAL | $ | 5275.87 |

**B. How the Amount Due at Lease Signing or Delivery Will Be Paid**

| | | |
|---|---|---|
| 1. Net Trade-In Allowance | $ | N/A |
| 2. Rebates and Noncash Credits | $ | 3775.87 |
| 3. Amount to be Paid in Cash | $ | 1500.00 |
| TOTAL | $ | 5275.87 |

## 10. MY MONTHLY PAYMENT IS DETERMINED AS SHOWN BELOW.

A. **Gross Capitalized Cost.** The agreed upon value of the Vehicle ($ **70507.03** ) and any items I pay for over the Lease Term (such as taxes, fees, service contracts, insurance, and any outstanding prior credit or lease balance) (See Section 13 for an itemization of this amount). $ **70507.03**

B. **Capitalized Cost Reduction.** The amount of any net trade-in allowance, rebate, noncash credit, or cash I pay that reduces the Gross Capitalized Cost. – $ **2365.33**

C. **Adjusted Capitalized Cost.** The amount used in calculating my Base Monthly Payment. = $ **68141.70**

D. **Residual Value.** The value of the Vehicle at the end of the Lease used in calculating my Base Monthly Payment. – $ **48867.50**

E. **Depreciation and any Amortized Amounts.** The amount charged for the Vehicle's decline in value through normal use and for other items paid over the Lease Term. = $ **19274.20**

F. **Rent Charge.** The amount charged in addition to the Depreciation and any Amortized Amounts. + $ **6233.96**

G. **Total of Base Monthly Payments.** The Depreciation and any Amortized Amounts plus the Rent Charge. = $ **25508.16**

H. **Lease Payments.** The number of payments in my Lease. ÷ **36**

I. **Base Monthly Payment.** = $ **708.56**

J. **Sales/Use Tax.** + $ **67.31**

K. **N/A** + $ **N/A**

L. **Total Monthly Payment.** = $ **775.87**

---

**Early Termination.** I may have to pay a substantial charge if I end this Lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the Lease is terminated. The earlier I end the Lease, the greater this charge is likely to be.

---

11. **Excessive Wear and Use.** I may be charged for excessive wear based on your standards for normal use and for mileage in excess of total miles over the scheduled Lease Term of **30000** miles, at the rate of **30** cents per mile.

12. **Purchase Option at End of Lease Term.** I have an option to purchase the Vehicle ("as is") at the Scheduled Termination of the Lease for its Residual Value of $ **48867.50** . The purchase option price does not include official fees, such as those for taxes, title, registration and license/tags. See Section 27 for more information.

**Other Important Terms.** See all pages of this Lease for additional information on early termination, purchase options, and maintenance responsibilities, warranties, late and default charges, insurance, and any security interest, if applicable.

---

## 13. ITEMIZATION OF GROSS CAPITALIZED COST

| | | | | | |
|---|---|---|---|---|---|
| A. Agreed Upon Value of Vehicle as Equipped at the Time of Lease Signing | $ | 70507.03 | H. Document Processing Charge (not a governmental fee) | $ | N/A |
| B. Agreed Upon Value of Each Accessory and item of Optional Equipment Original Lessor Agrees to Add to the Vehicle after Lease Signing | | N/A | I. Maintenance Agreement | $ | N/A |
| | | | J. Mechanical Breakdown Protection | $ | N/A |
| N/A | $ | N/A | K. Extended Warranty | $ | N/A |
| N/A | $ | N/A | L. Service Contract | $ | N/A |
| N/A | $ | N/A | M. Prior Credit or Lease Balance* | $ | N/A |
| C. Total Agreed Upon Value of Vehicle | $ | 70507.03 | N. Electronic Vehicle Registration or Transfer Charge (not a governmental fee) | $ | N/A |
| D. Initial Title, License & Registration Fees | $ | N/A | O. Acquisition Fee | $ | N/A |
| E. Sales/Use Tax | $ | N/A | P. Other N/A | $ | N/A |
| F. Federal Luxury Tax | $ | N/A | Q. Other N/A | $ | N/A |
| G. Sales Tax on Capitalized Cost Reduction | $ | N/A | R. Other N/A | $ | N/A |
| | | | TOTAL GROSS CAPITALIZED COST (C through R) | $ | 70507.03 |
| | | | *Leave blank unless Lessor has paid prior credit or lease balance. | | |

$ __5044.83__ This is an estimate of the total amount I agree to pay for official and license fees, registration, title and taxes (including personal property taxes) over the Lease Term, whether included in my Monthly Payment, Amount Due at Lease Signing or Delivery, or separately billed. The actual total of Official Fees and Taxes may be higher or lower, depending on the tax rates in effect or the value of the Vehicle at the time a fee or tax is assessed. This estimate is based on my Garaging Address and may increase if I move or if tax rates change. For some of these items, you may invoice me after the taxing authority has billed you, sometimes after the lease terminates.

## 15. OPTIONAL PRODUCTS AND SERVICES.

I am not required to buy any of the optional products and services listed below. These products and/or services will not be provided unless I check the appropriate box, fill in all necessary information, initial below and I am accepted by the Provider. Because these products or services are not provided by the Lessor, I understand that I must pursue all related matters, including refunds, through the listed Provider. By initialing below, I agree that I have received and read a notice of the terms of the product or service and I want to obtain the product or service for the charge shown. A portion of the charge may be retained by Lessor (Center).

| | | | | |
|---|---|---|---|---|
| ☐ Maintenance Agreement | **N/A**<br>Provider | **N/A**<br>Term (Months) | $ **N/A**<br>Charge | **N/A**<br>Lessee/Co-Lessee Initials |
| ☐ Mechanical Breakdown Protection | N/A<br>Provider | **N/A**<br>Term (Months) | $ **N/A**<br>Charge | **N/A**<br>Lessee/Co-Lessee Initials |
| ☐ **N/A** | **N/A**<br>Provider | **N/A**<br>Term (Months) | $ **N/A**<br>Charge | **N/A**<br>Lessee/Co-Lessee Initials |

Mileage Allowance/Refund.
__30,017__ I agree to this Mileage Allowance for the term of this Lease. My Monthly Payment and Residual Value for this Lease have been
Enter Mileage          calculated, in part, by using this Mileage Allowance.
☐ If this box is checked, I have elected a high Mileage Allowance. I may receive a refund of __N/A__ cents per unused mile for the unused miles between __N/A__ miles and __N/A__ miles, unless (a) the Vehicle is considered a total loss under my insurance coverage due to damage, theft or destruction, (b) I default, (c) I terminate this Lease early, (d) I purchase the Vehicle, or (e) the refund is less than $1. Any refund will be reduced by any amount I owe under this Lease at the Scheduled Termination.

## 16. WARRANTIES

The Vehicle is subject to the following express warranties. If the Vehicle is new, the Vehicle is subject to the standard manufacturer's new vehicle warranty. The Vehicle is also covered by the following, if checked:
☐ Remainder of the standard manufacturer's new vehicle warranty if the Vehicle is not a new vehicle.
☐ _____**N/A**_____

UNLESS A LESSOR'S WARRANTY IS DISCLOSED ABOVE, LESSOR, TO THE EXTENT PERMITTED BY LAW, (1) MAKES NO WARRANTIES OR REPRESENTATIONS, EITHER EXPRESSED OR IMPLIED, AS TO THE VEHICLE OR ANY OF ITS PARTS OR ACCESSORIES AND (2) MAKES NO WARRANTY OF MERCHANTABILITY OR FITNESS OF THE VEHICLE FOR ANY PARTICULAR PURPOSE. I ACKNOWLEDGE THAT I AM LEASING THE VEHICLE FROM THE LESSOR "AS IS."

## 17. INSURANCE VERIFICATION

I agree to maintain the insurance coverage described in Section 20. I affirm that such insurance is in force on the date of this Lease. I authorize Lessor and its assignees to speak to my insurance agent or company, and any future insurance agents or companies, about my coverage for the leased Vehicle.

**PROGRESSIVE WEST INS CO**      931556824
Insurance Company
**PROGRESSIVE**            10970 SHERMAN WAY #106A        Coverage Verified (Center Employee's Initials)
Agent Name                  BURBANK CA 91505          818/333-0515
                          Address                    Phone No.

All matters regarding insurance should be sent by e-mail to insuranceinfo@bmwfs.com or faxed to 888-725-8456.

## MY OBLIGATIONS DURING THIS LEASE

**18. Vehicle Use.** I agree not to use (or permit others to use) the Vehicle: (a) in any way that violates the law or the terms of my insurance policy or this Lease; (b) to transport goods or people for hire, lease or rental to others; (c) outside the state where it was first titled for more than 30 days without your prior written consent; or (d) outside the United States, except for less than 30 days in Canada. I will not allow an uninsured person to operate the Vehicle at any time, or allow any third party, other than my spouse, to operate the Vehicle without written permission from you. I will not physically change the Vehicle's body or interior in any way unless I first get your written consent.

**19. Vehicle Maintenance, Service, Repairs, and Reconditioning.** I agree to maintain, service, repair, and recondition the Vehicle during the Lease Term with new and genuine manufacturer's original equipment replacement parts as recommended in the Vehicle owner's manual. I will keep complete maintenance records and return them with the Vehicle.

I am responsible for repairs of all collision, accident, and other physical damage that is not a result of normal wear and use. These repairs include, but are not limited to, those necessary to return the Vehicle to its pre-damage condition, including, but not limited to, repairing damage to exterior panels and components, structural components, vehicle safety systems such as airbag systems and seatbelts, and the Vehicle's interior. All repairs must be made with new and genuine manufacturer's original equipment replacement parts. I will discuss these requirements with my insurance company prior to signing

my insurance agreement, damage repair estimate, or before authorizing any damage repair work. If I have not had the repairs made before the Vehicle is returned at or before the end of the scheduled Lease Term, I will pay the estimated cost of such repairs to restore the Vehicle to its pre-damage condition, even if the repairs are made after the Vehicle is returned.

If the Vehicle's odometer becomes inoperative or malfunctions, I agree to notify you and have the odometer repaired within 30 days. I agree not to make any alterations that decrease the Vehicle's value or usefulness or that violate the law. If I add non-standard equipment to the Vehicle, I will return it to original manufacturer specifications before the end of the Lease Term. If the non-standard equipment cannot be removed or modified without decreasing the Vehicle's value or usefulness when the Vehicle is returned to you, the equipment will become your property, and I may be billed in accordance with Section 32 below. You may inspect the Vehicle at any reasonable time.

**NO PHYSICAL DAMAGE OR LIABILITY INSURANCE COVERAGE FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS IS INCLUDED IN THIS LEASE.**

**20. Required Insurance.** During the term of this Lease and until I return the Vehicle, I agree to maintain the following types and amounts of primary insurance: (a) personal liability for bodily injury or death to any one person for

(b) property damage liability for not less than $10,000; (c) comprehensive liability, including fire and theft, for the Vehicle's actual value (payable in cash and not by a replacement vehicle) with a maximum deductible of $1,000; (d) collision liability for the Vehicle's actual value (payable in cash and not by a replacement vehicle) with a maximum deductible of $1,000. The coverage will name you as an additional insured and loss payee. I will provide you with at least 30 days advance notice of cancellation. You have the right to endorse my name on any insurance check or settlement you receive. You also have the right to speak to my insurance company about my insurance coverage.

Except to the extent required by the motor vehicle financial responsibility laws of the applicable state or otherwise by law, I acknowledge that you do not extend any of your motor vehicle financial responsibility or provide insurance coverage to me, any authorized additional driver(s), passengers or third parties through this Lease. If valid automobile liability insurance or self insurance is available on any basis for me, additional authorized driver(s) or any other driver and such insurance or self insurance satisfies the applicable state motor vehicle financial responsibility law, then you extend none of your motor vehicle financial responsibility. However, if I and any additional authorized driver(s) are in compliance with the terms and conditions of this Lease and if you are obligated to extend your motor vehicle financial responsibility to me, any additional authorized driver(s) or third parties, then your obligation is limited to the applicable state minimum financial responsibility amounts. Unless required by law, your financial responsibility shall not extend to any claim made by any passenger while riding in or on or getting in or out of the Vehicle. Your financial responsibility shall not extend to liability imposed or assumed by anyone under any worker's compensation act, plan or contract.

Except as required by law, you do not provide Personal Injury Protection, No Fault Benefits or Medical Payment Coverage (PIP) or Uninsured/ Underinsured Motorist Protection (UM/UIM) through this Lease. If you are required by law to provide PIP or UM/UIM, I expressly select such protection in the minimum limits with maximum deductible and expressly waive and reject PIP and/or UM/ UIM limits in excess of the minimum limits required by law.

**21. Registration, Titling, and Taxes.** I agree to pay registration, title, license, inspection fees and other official fees and taxes in connection with the Vehicle when due, including taxes imposed on fees such as, but not limited to, the disposition fee. You may, at your discretion, pay these fees or taxes to protect your interest in the Vehicle. If you pay such fees or taxes on my behalf, I agree to reimburse you when I am billed. If I fail to reimburse you within 60 days after I am billed, then I will pay you a monthly late charge, until the unpaid balance of the fees and taxes has been paid in full. The amount of each such late charge will not exceed 1.5% of the outstanding unpaid balance of the fees and taxes then due, or the maximum amount permitted by law, whichever is less. The remedies described in this Section 21 are in addition to any remedies you may have pursuant to Section 23.

If I move to another location during the Lease Term or it becomes necessary for you to correct any title or registration deficiencies, or to perfect your interest in the Vehicle, whether as a result of my failure to cooperate or other action or inaction on my part, I agree to pay you a $30 service charge in addition to the actual fees or taxes, unless prohibited by law, to process registration, title and license documents.

**22. Payments, Late Charge, Returned Payment Charge, Fines, and Traffic Tickets.** If you do not receive my total Monthly Payment within 10 days after it is due, I agree to pay a late charge of $30 or 5% of the amount of the payment that is late, whichever is greater, but not to exceed any limit under applicable law. If any payment is returned to you unpaid for any reason, or if any electronic debit authorization is not paid, I agree to pay you a $25 service charge per item when I am billed.

If you receive notice of any third-party charges related to the Vehicle (including but not limited to fines, traffic tickets, parking tickets, toll violations, towing fees, storage fees, or repair bills), I will pay you a $30 service charge per item whether or not you pay such third-party charges. You may, at your discretion, pay these charges to protect your interest in the Vehicle. If you pay such charges on my behalf, I agree to reimburse you when I am billed. If I fail to reimburse you within 60 days after I am billed, then I will pay you a monthly late charge, until the unpaid balance of such third-party charges has been paid in full. The amount of each such late charge will not exceed 1.5% of the outstanding unpaid balance of the third-party charges then due, or the maximum amount permitted by law, whichever is less. I further agree to pay you any and all costs you incur associated with my failure to pay such fines, charges or traffic tickets, including legal costs and reasonable attorneys' fees as allowed by applicable law. The remedies described in this Section 22 are in addition to any remedies you may have pursuant to Section 23.

**23. Default and Remedies.** I will be in default under this Lease if:
    (a)   I fail to make a Monthly Payment when due;

(b) I fail to maintain the required insurance;
   (c)  I fail to return the Vehicle at the end of the Lease Term;
   (d)  I fail to keep any of my promises under this Lease;
   (e)  I abandon the Vehicle;
   (f)  I or a guarantor become(s) insolvent or die(s);
   (g)  Any information in my credit application or a guarantor's credit application is false or misleading; or
   (h)  The Vehicle is subject to or threatened by seizure, confiscation, levy, or other involuntary transfer by governmental, administrative or legal process.

If I am in default, you may do any or all of the following:
   (i)   Terminate this Lease and my rights to possess and use the Vehicle;
   (ii)  Take possession of the Vehicle by any method permitted by law;
   (iii)  Pursue any other remedy permitted by law;
   (iv)  Dispose of any personal or other property in the Vehicle at the time of repossession if I do not reclaim it within 10 days;
   (v)  Require that I pay the sum of: (1) any past due Monthly Payments; plus (2) any official fees and taxes assessed or billed in connection with this Lease and the Vehicle and any other amounts needed to satisfy my obligations under this Lease except Excess Wear and Use and Excess Mileage charges; plus (3) the amount by which the Adjusted Lease Balance (explained in Section 30) exceeds the Realized Value of the Vehicle (Section 31); plus (4) all of your expenses for taking these actions, including, but not limited to expenses for repossession, transportation, storage, and/or sale of the Vehicle; plus (5) all fees and costs of collections, including reasonable attorneys' fees, court costs, interest, and other related expenses involving the enforcement of the terms and conditions of the this Lease, the protection or defense of your interest in the Lease or Vehicle and all losses you incur in connection with my default of this Lease whether such action is in law, equity or an administrative remedy. Furthermore, if I do not pay these amounts when you ask, you may charge me interest at a rate not exceeding the highest lawful rate until I pay;
   (vi)  If the Vehicle has an electronic tracking device, I agree that you may use the device to find the Vehicle.

**24. Vehicle Loss or Damage.** I agree to immediately notify you if the Vehicle is damaged or destroyed in an accident, stolen, abandoned, or taken by a police or other governmental agency. In that event, you reserve the right to terminate this Lease and my liability will either be: (a) calculated under Section 25 below, if I am in compliance with my insurance obligations; or (b) calculated under Section 23 above, if I am not in compliance with my insurance obligations. If the Vehicle is stolen or destroyed, another vehicle may be substituted in its place only if you agree to the substitution. You have no obligation to provide a substitution vehicle. If the Vehicle is damaged and you do not terminate this Lease because the Vehicle is reasonably repairable, I agree to make the repairs in accordance with Section 19 above at my expense.

**25. "Gap Amount" Waiver.** If I am in compliance with my insurance obligations under this Lease and the Vehicle is damaged, stolen or destroyed and considered a total loss under my insurance coverage, I will not be obligated to pay you the gap amount (the difference between the Adjusted Lease Balance and the actual cash value of the Vehicle as of the date of loss) if the claim for total loss is actually paid to you by my insurance company. However, I will be obligated to pay you: (1) any and all amounts due and owing needed to satisfy my obligations under this Lease (including past due Monthly Payments and any official fees and taxes assessed or billed in connection with this Lease and the Vehicle); plus (2) any amounts (including Monthly Payments) that become due pending receipt of the insurance proceeds, plus (3) the deductible amount under my insurance policy, plus (4) any amounts deducted from the actual cash value of the Vehicle by the insurance carrier. If as of the date of loss, I do not have a physical damage insurance policy that complies with the insurance requirements set forth in this Lease, no gap amount waiver applies and the amount of my liability will be determined as set forth in Section 23.

**26. Power of Attorney.** I appoint you, to the extent permitted by law, through your officer or employee, as my attorney-in-fact. My grant of this power of attorney is coupled with an interest, and is irrevocable until all obligations I owe under this Lease are paid in full. As my attorney-in-fact, you can sign on my behalf all Certificates of Ownership, Registration Cards, applications, affidavits, or any other documents required to register and properly perfect your interest in the Vehicle; transfer my entire interest in the Vehicle as part of a repossession and sale; act on my behalf in insurance matters relating to the Vehicle, including, but not limited to, the power to endorse insurance proceeds checks or drafts on my behalf; and cancel any Credit Life, Credit Disability, GAP Coverage, Extended Warranty, or other optional insurance financed under this Lease, and apply the refunded premium or cost to my outstanding balance if I am in default. Should an original power of attorney be necessary to accomplish any of the preceding, I agree to execute a separate identical power of attorney document and provide you with same.

**27. Purchase Option.** I have an option to purchase the Vehicle AS-IS, WHERE-IS. If I want to buy the Vehicle, I will notify you in advance and agree to complete any documents you require for the purchase. I also agree to re-register and re-title the Vehicle at my own expense in my name at the time I purchase it. If I fail to do so, you reserve the right to cancel the registration. At the Scheduled Termination of the Lease, the purchase price will be the Residual Value (Section 10.D). Prior to the end of the Lease Term, the purchase price will be the Adjusted Lease Balance (Section 30). In either case, I agree to also pay any other amounts due or outstanding under the Lease at the time of purchase such as any official fees, unpaid Monthly Payments or late charges.

**28. Vehicle Return.** If I do not purchase the Vehicle, I agree to return it to the place you specify with all parts and accessories and in good working order. Upon return, I agree to complete and sign an odometer disclosure statement and a vehicle inspection report, which may be used in determining any excess wear and use and/or excess mileage. If I do not return the Vehicle at the end of my Lease Term, I am in default and will continue to pay an amount equal to the Monthly Payment for each month until the time that I return the Vehicle. Payment of this amount does not give me the right to keep the Vehicle nor does it automatically extend this Lease.

**29. Scheduled Termination of the Lease.** Unless I terminate my Lease early or purchase the Vehicle, my Lease will terminate on the Scheduled Maturity Date, at which time, I agree to pay you: (a) a $350 Disposition Fee, plus (b) any unpaid Monthly Payments then due and other amounts needed to satisfy my obligations under this Lease, plus (c) any Excess Mileage and Excess Wear and Use charges (Section 11), plus (d) any official fees or taxes assessed or billed in connection with this Lease.

**30. Early Termination of the Lease.** I may terminate this Lease at any time by purchasing the Vehicle (Section 27) or by returning the Vehicle to a location selected by you, if I am in full compliance with the Lease and satisfy all of my Early Termination obligations. If I do not purchase the Vehicle, I may choose one of the following options to determine my Early Termination liability:

**Option A.** I agree to pay the sum of: (1) all remaining Monthly Payments; plus (2) any past due Monthly Payments; plus (3) any official fees and taxes assessed or billed in connection with this Lease and the Vehicle and any other amounts needed to satisfy my obligations under this Lease; plus (4) any Excess Wear and Use and Excess Mileage Charges; plus (5) a $350 Disposition Fee. However, should my Early Termination Liability calculated under this Option exceed what I would have owed had I selected Option B, you will waive the difference and my liability will be capped at Option B.

**Option B.** I agree to pay the sum of: (1) any past due Monthly Payments; plus (2) any official fees and taxes assessed or billed in connection with this Lease and the Vehicle and any other amounts needed to satisfy my obligations under this Lease except Excess Wear and Use and Excess Mileage charges; plus (3) a $350 Disposition Fee; plus (4) the amount by which the Adjusted Lease Balance (explained below) exceeds the Realized Value of the Vehicle (Section 31).

Under either option, you may apply some or all of my Security Deposit to what I owe and I will remain liable for personal property taxes that may be assessed and/or billed after the Lease terminates.

The "Adjusted Lease Balance" is determined at any given time by subtracting the scheduled Base Monthly Payments earned through the early termination date from the Adjusted Capitalized Cost and adding to the difference the cumulative Rent Charge earned through the early termination date. The Rent Charge is calculated according to the "constant yield method". Under the constant yield method, each month's rent charge is earned in advance by multiplying the constant rate implicit in the Lease times the Adjusted Lease Balance. The Rent Charge calculations are based on the assumption that Lessor will receive the Monthly Payments on the exact due date.

**31. Realized Value of the Vehicle.** For the purpose of calculating my Early Termination liability (Section 30), the Realized Value of the Vehicle is (a) the price you receive for the Vehicle upon disposition in a commercially reasonable manner or (b) a price agreed to by you and me in a separate writing. If the Vehicle is a total loss as set forth in Section 24 above and I am in compliance with my insurance obligations, the amount of any deductible and the proceeds of the settlement of the insurance claim you receive are the "Realized Value." The Realized Value may also be determined by an appraisal of the wholesale value of the Vehicle, which I may obtain, at my own expense from a professional, independent appraiser agreeable to both of us. If I obtain such an appraisal not later than 3 days before the date of scheduled disposition of the Vehicle by you, the appraisal will be the final and binding Realized Value.

**32. Excessive Wear and Use.** I agree to pay you the costs of all repairs to the Vehicle that are not the result of normal wear and use, whether or not you actually repair the Vehicle. Excessive wear and use includes, but is not limited to:

(a)  inoperative electrical or mechanical parts;
(b)  dented, scratched, chipped, rusted, pitted, broken or mismatched body parts, paint, vehicle identification items, trim or grill work;
(c)  non-functioning, scratched, cracked, pitted or broken glass or lights;
(d)  missing equipment, parts, accessories or adornments;
(e)  torn, damaged, burned, or stained interior;
(f)  repair of any damage that makes the Vehicle unlawful or unsafe to drive;
(g)  damage due to installation or removal of non-manufacturer, after-market or replacement parts;
(h)  damage (including damage to the engine) due to failure to maintain the Vehicle in accordance with Section 19; or
(i)  tires with tread depth of less than 1/8" remaining at the shallowest point, and/or tires that are not all of the same grade, quantity or quality as those delivered with the Vehicle.

If I fail to pay any excess wear and use, excess mileage or other lease end charges within thirty days of the due date indicated on my end of lease bill, I will pay you interest on the unpaid balance of these charges at the rate of 18 percent per annum, if permitted by law, or the maximum rate permitted if less, until paid in full.

I agree to pay state and local taxes that may be due on amounts owed for lease end charges, including but not limited to excess wear and use and excess mileage fees.

ADDITIONAL INFORMATION

**33. Indemnification.** I agree to indemnify, defend and hold you harmless from all claims, liabilities, suits, losses, damages and expenses (including attorney's fees and court costs) including, but not limited to, claims concerning the condition, maintenance, use, ownership or operation of the Vehicle, or claims made under the strict liability doctrine.

**34. Refundable Security Deposit.** You may use some or all of my Security Deposit to pay any amount I owe under this Lease at the end of my Lease Term or upon early termination of the Lease. I will not earn any interest on my Security Deposit. After I have paid all my obligations under this Lease, you will refund to me any part of my Security Deposit that is not used to pay what I owe you.

**35. Assignment.** You may assign your interests under this Lease without my consent. I MAY NOT TRANSFER OR SUBLEASE THIS VEHICLE TO A THIRD PARTY OR ASSIGN THE LEASE OR ANY RIGHTS UNDER IT WITHOUT YOUR PRIOR WRITTEN APPROVAL, WHICH YOU MAY WITHHOLD IN YOUR SOLE JUDGMENT.

**36. Notices.** All correspondence and notices will be sent to me at my Billing Address shown on this Lease unless I give you a different address in writing.

**37. Other Terms.** Waiver. You may waive or delay enforcement of your rights under this Lease without affecting your rights on future defaults. Severability. Any part of this Lease that is not enforceable shall not affect the validity of the remainder of this Lease. Joint Liability. If more than one Lessee signs this Lease, each Lessee shall be jointly and severally liable for all obligations under this Lease. Choice of Law. Except as may otherwise be provided by law, this Lease will be subject to the laws of the state where I sign it. In the event that both parties agree not to arbitrate in accordance with Section 38 below, any dispute shall be brought in a court located in the state where I signed the Lease. Entire Agreement. This Lease describes all agreements between us with respect to the Lease of the Vehicle. All prior agreements, whether oral or in writing, are superseded. Maintaining Payments. I may not change or stop any Monthly Payments for any reason, even if I do not receive an invoice, and even if the Vehicle is stolen, destroyed, seized by the government or the court, experiences mechanical problems, or does not satisfactorily perform. Lessee's Warranties. I represent that my driver's license and the driver's license of any authorized driver has not been revoked or suspended within the last 5 years. I promise that I have given a true Amount Owed for any vehicle traded in. If the correct Prior Credit or Lease Balance is more than the amount shown in Section 4.B, I agree to pay you the excess amount upon demand. Personal Property. Lessor shall not be responsible at any time for any personal property

05/20/2020  07:58 pm

EXHIBIT A - 35     Page 5 of 7

DocuSign Envelope ID: 0D1468AC-83EC-A896-A173-B7FEE5F23A7B

my funds to an unclaimed funds department, you may retain such fee as is allowable per state law.

Claim(s) that are subject to arbitration and the other party files a motion to compel arbitration, the court which it be the responsibility of the party prosecuting the Claim(s) to select an arbitration administrator in accordance with this paragraph and commence the arbitration proceeding in accordance with the administrator's rules and procedures.

## 38. ARBITRATION CLAUSE

### PLEASE REVIEW - IMPORTANT - AFFECTS OUR LEGAL RIGHTS

**NOTICE:** Either you or I may choose to have any dispute between us decided by arbitration and not in a court or by jury trial. If a dispute is arbitrated, I will give up my right to participate as a class representative or class member on any Claim I may have against you including any right to class arbitration or any consolidation of individual arbitrations. Discovery and rights to appeal in arbitration are generally more limited than in a lawsuit, and other rights you and I would have in court may not be available in arbitration.

**"Claim"** broadly means any claim, dispute or controversy, whether in contract, tort, statute or otherwise, whether preexisting, present or future, between me and you or your employees, officers, directors, affiliates, successors or assigns, or between me and any third parties if I assert a Claim against such third parties in connection with a Claim I assert against you, which arises out of or relates to my credit application, lease, purchase or condition of this Vehicle, this Lease or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Lease). Any Claim shall, at your or my election, be resolved by neutral, binding arbitration and not by a court action. However, "Claim" does not include any dispute or controversy about the validity, enforceability, coverage or scope of this Arbitration Clause or any part thereof (including, without limitation, the Class Action Waiver set forth below and/or this sentence); all such disputes or controversies are for a court and not an arbitrator to decide. But any dispute or controversy that concerns the validity or enforceability of the Lease as a whole is for the arbitrator, not a court, to decide. In addition, "Claim" does not include any individual action brought by me in small claims court or my state's equivalent court, unless such action is transferred, removed or appealed to a different court. Moreover, this Arbitration Clause will not apply to any Claims that are the subject of (a) a class action filed in court that is pending as of the effective date of this Arbitration Clause in which I am alleged to be a member of the putative class (however, you and I will continue to be bound by any prior Arbitration Clause) or (b) a motion to compel arbitration filed by you against me before the effective date of this Arbitration Clause pursuant to a prior Arbitration Clause (however, you and I will continue to be bound by any prior Arbitration Clause).

**Class Action Waiver. Notwithstanding any other provision of this Lease or Arbitration Clause, if either you or I elect to arbitrate a Claim, neither you nor I will have the right: (a) to participate in a class action, mass action, private attorney general action or other representative action in court or in arbitration, either as a class representative or class member; or (b) to join or consolidate Claims with claims of any other persons. No arbitrator shall have authority to conduct any arbitration in violation of this provision. (Provided, however, that the Class Action Waiver does not apply to any lawsuit or administrative proceeding filed against you by a state or federal government agency even when such agency is seeking relief on behalf of a class of lessees including me. This means that you will not have the right to compel arbitration of any claim brought by such an agency). The Class Action Waiver is material and essential to the arbitration of any Claims between the parties and is nonseverable from this Arbitration Clause. If the Class Action Waiver is limited, voided or found unenforceable, then this Arbitration Clause (except for this sentence) shall be null and void with respect to such proceeding, subject to the right to appeal the limitation or invalidation of the Class Action Waiver. The parties acknowledge and agree that under no circumstances will a class action be arbitrated.**

I may choose the American Arbitration Association ("AAA"), 120 Broadway, New York, NY 10271, www.adr.org, 1-800-778-7879 or JAMS, 1920 Main Street, Suite 300, Irvine, CA 92614, www.jamsadr.com, 1-800-352-5267 to administer the arbitration. The rules and forms of the AAA and JAMS may be obtained on their websites or by writing to these organizations at the addresses listed above. Either you or I may request an expedited hearing under the applicable rules. If the AAA and JAMS are unable or unwilling to serve as administrator, the parties may agree upon another administrator or, if they are unable to agree, a court shall determine the administrator. No company may serve as administrator, without the consent of all parties, if it adopts or has in place any formal or informal policy that is inconsistent with and purports to override the terms of this Arbitration Clause. If the chosen administrator's rules or other provisions of this Lease (including any other arbitration provision relating to this Lease) conflict with this Arbitration Clause, then the provisions of this Arbitration Clause shall control. If a party files a lawsuit in court asserting

Arbitrators shall be attorneys with at least ten years of experience or retired judges and shall be selected pursuant to the applicable rules. The arbitrator will not be bound by judicial rules of procedure and evidence that would apply in a court, nor by state or local laws that relate to arbitration proceedings. The arbitrator will honor statutes of limitation and claims of privilege recognized under applicable law. In determining liability or awarding damages or other relief, the arbitrator will follow the applicable substantive law, consistent with the FAA (Federal Arbitration Act), that would apply if the matter had been brought in court, including, without limitation, punitive damages (which shall be governed by the Constitutional standards employed by the courts). The arbitrator may award any damages or other relief or remedies permitted by applicable law including equitable, temporary and/or provisional remedies. The arbitrator shall write a brief explanation of the grounds for the decision. Any arbitration hearing that I attend shall be conducted at a place reasonably convenient to where I reside. Any court having jurisdiction may enter judgment on the arbitrator's award.

In any arbitration that I have commenced against you, if the total amount of my Claim(s) is less than $25,000: (a) you will pay any and all fees of the administrator and/or the arbitrator if I make a written request for you to pay such fees; and (b) you will pay my reasonable attorneys' and expert witness fees and costs if and to the extent I prevail in the arbitration. Moreover, you will always bear any fees and costs (including administrator and arbitrator fees and reasonable attorneys' and expert witness fees and costs) that you are required to bear pursuant to the administrator's rules or applicable law. You will not seek reimbursement from me of any fees or costs (including administrator and arbitrator fees and attorneys' and expert witness fees and costs) that you incur on your own behalf or pay on my behalf in connection with the arbitration.

This Lease involves interstate commerce and this Arbitration Clause and any arbitration hereunder shall be governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA") and not by any state law concerning arbitration. However, the governing law as to the substantive issues of the Lease and Vehicle shall be the law of the state in which this Lease was executed. The arbitrator's award shall be final and binding on all parties, except for any right of appeal provided by the FAA. However, if the amount of the Claim exceeds $50,000 or involves a request for injunctive or declaratory relief that could foreseeably involve a cost or benefit to either party exceeding $50,000, any party can, within 30 days after the entry of the award by the arbitrator, appeal the award to a three-arbitrator panel administered by the administrator. The panel shall reconsider anew any aspect of the initial award requested by the appealing party. The decision of the panel shall be by majority vote. Reference in this arbitration provision to "the arbitrator" shall mean the panel if an appeal of the arbitrator's decision has been taken. The costs of such an appeal will be borne in accordance with the preceding paragraph. Any final decision of the appeal panel is subject to judicial review only as provided under the FAA.

You and I may retain any rights to self-help remedies, such as repossession. The exercise of any self-help remedies is not a "Claim" subject to arbitration, nor is any individual action in court by one party that is limited to preventing the other party from using a self-help remedy and that does not involve a request for damages or monetary relief of any kind. Neither you nor I waive the right to arbitrate by using self-help remedies. This Arbitration Clause shall survive any termination, payoff or transfer of this Lease, and shall also survive any bankruptcy to the extent consistent with applicable bankruptcy law. If any part of this Arbitration Clause, other than the Class Action Waiver, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable.

Notwithstanding any other provision for notice contained in the Lease, any arbitration Claim or other notice provided under the rules of the arbitration administrator will be given to you at the following address: If my Claim is against the Lessor, I agree that notice of my Claim will be given to the Lessor at the address specified in Section 1 of this Lease. If my Claim is against the Assignee (designated in Section 2 of this Lease), I agree that notice of my Claim will be given at 5550 Britton Parkway, Hilliard, OH 43026. If my Claim is against both Lessor and Assignee, I agree that both Lessor and Assignee will be notified of my Claim at the addresses indicated herein.

In this Section 39, I am referred to as "You".

You have the right to return the Vehicle, and receive a refund of any payments made, if the credit application is not approved, unless nonapproval results from an incomplete application or from incorrect information provided by you.

THERE IS NO COOLING OFF PERIOD. California law does not provide for a "cooling off" or other cancellation period for vehicle leases. Therefore, you cannot later cancel this Lease simply because you change your mind, decided the Vehicle costs too much, or wish you had acquired a different vehicle. You may cancel this Lease only with the agreement of the Lessor or for legal cause, such as fraud.

> NOTICE TO LESSEE: (1) Do not sign this Lease before you read it or if it contains any blank spaces to be filled in; (2) You are entitled to a completely filled in copy of this Lease; (3) Warning – Unless a charge is included in this Lease for public liability or property damage insurance, payment for that coverage is not provided by this Lease.

By signing below, you acknowledge that you have read all pages of this Lease, and that you have received a completely filled in copy of this Lease.

X _____    X _____
Lessee                                          Lessee

By (Print Name & Title if Corporation) _____    By (Print Name & Title if Corporation) _____

---

**40. GUARANTY**

I jointly and severally guarantee payment and performance of all promises contained in this Lease. Upon default, Lessor may proceed immediately against me without first proceeding against the Lessee. My liability will be unconditional and will not be affected by any settlement, extension, renewal or modification of this Lease whether or not by operation of law. I waive all right to notices of every kind, including rights to demand and presentment. I agree to pay all expenses (including reasonable attorney's fees and legal expenses) incurred by Lessor if Lessor has to enforce this Guaranty.

> NOTICE TO LESSEE: (1) Do not sign this Lease before you read it or if it contains any blank spaces to be filled in; (2) You are entitled to a completely filled in copy of this Lease; (3) Warning – Unless a charge is included in this Lease for public liability or property damage insurance, payment for that coverage is not provided by this Lease.

By signing below, you acknowledge that you have read all the pages of this Lease, that you have received a completely filled in copy of this Lease.

Guarantor's Signature: X _____    Guarantor's Signature: X _____
**N/A**                                                            **N/A**
Name                                                                Name
**N/A**                                                            **N/A**
Address                                                            Address

---

**41. LESSOR'S ACCEPTANCE AND ASSIGNMENT**

By signing below, Lessor (1) accepts the terms, conditions and obligations of this Lease and (2) assigns all right, title and interest in the Vehicle and this Lease to the Assignee listed in Section 2 above. This Lease, including all amounts to become due under it, and any guaranty, are subject to the provisions of the Center Agreement between Lessor and BMW FS.

Lessor Name **BMW/MINI OF MONROVIA**          Signature of Authorized Representative _____